# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CLINTON C.,[1]                                    )
                                                  )
                    Plaintiff,                    )
                                                  )            CIVIL ACTION
v.                                                )
                                                  )            No. 22-1213-JWL
KILOLO KIJAKAZI,                                  )
Acting Commissioner of Social Security,           )
                                                  )
                    Defendant.                    )
_____            )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed an application for SSDI and SSI benefits on December 15, 2017.  (R. 198, 200).  On May 30, 2019 ALJ Werner issued a decision denying the applications.  Id. at 18-26.  In due course, Plaintiff appealed that decision to a court in this district which granted the Commissioner's unopposed motion and remanded that case to the agency for further proceedings.  Id. 830.  On remand the Appeals Council directed the ALJ to "obtain evidence from a medical expert related to whether the claimant's impairment meets or equals the severity of an impairment" in the Listing of Impairments, if warranted; evaluate the medical source opinions and prior administrative medical findings and "[g]ive further consideration to the claimant's maximum residual functional capacity;" and obtain evidence from a vocational expert (VE) if warranted.  Id. 833-34. The ALJ further developed the record and held a hearing at which a medical expert (ME), Dr. Berman, testified regarding whether Plaintiff's condition meets or medically equals a Listed impairment and a VE testified regarding the availability of jobs for an individual with Plaintiff's age, education, work experience, and certain limitations and functional abilities suggested by the ALJ and Plaintiff's counsel.  The ALJ issued the decision on remand on January 21, 2022.

On February 15, 2022, Plaintiff filed a letter with the Appeals Council stating his objections to the decision on remand.  Id., 923-33.  Along with his letter, Plaintiff submitted a statement from Dr. Seeber dated February 10, 2022, stating Plaintiff's hidradenitis suppurativa (HS) "outbreaks are as severe as outlined in listing 8.06."  Id. 752.  On July 19, 2022, the Appeals Council declined to exhibit Dr. Seeber's statement, found no basis in Plaintiff's exceptions to change the ALJ's decision, found that the

decision complied with the district court's and the Appeals Council's remand orders, and declined to assume jurisdiction of the appeal. (R. 752).

Plaintiff filed this case seeking judicial review of the Commissioner's decision on remand pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ improperly evaluated whether Plaintiff's conditions medically equal a Listed impairment, suggesting his conditions medically equal Listing 8.06, Listing 1.18, and arguing the ALJ "did not specifically consider the combined effect of obesity with the claimant's other severe and nonsevere impairments in his equivalency evaluation." (Pl. Br. 13-19) (quotation from p.16). He argues the ALJ's decision is not supported by substantial evidence because it is contradicted by Dr. Seeber's letter dated February 10, 2022 which was rejected by the Appeals Council despite that it was not available before the ALJ's decision issued on January 21, 2022. Id. 20-21. Plaintiff also claims the ALJ failed properly to evaluate the medical opinions of Dr. Seeber and Dr. Berman, failed to evaluate Plaintiff's allegations of disabling symptoms in accordance with the requirements of Social Security Ruling (SSR) 16-03, and failed to include all reasonable limitations when assessing Plaintiff's residual functional capacity (RFC). Id. 21-28.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136,

1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief, beginning with Dr. Seeber's February 2022 letter provided to the Appeals Council.

II.     **Evidence Provided in the First Instance to the Appeals Council**

As Plaintiff suggests in his Brief, Dr. Seeber submitted in the record before the

ALJ a Treating Source Statement dated August 18, 2019, containing her medical opinion

regarding Plaintiff's condition.  (R. 1011-12).  The ALJ explained he found Dr. Seeber's

unpersuasive, in part, because,

> When asked if the claimant's condition rose to the severity described in the
> listing [8.06, for HS], Dr. Seeber did not respond to that question.  Instead,
> she indicated only that the claimant's condition has worsened since onset,
> with scars and draining.  This does not speak to the issues in the listing.
> She does indicate his lesions can be painful, which is worsened by
> movement and heat.

(R. 772) (citing R. 1011).

As noted above, when Plaintiff sought review of the ALJ's decision by the

Appeals Council, he included a statement from Dr. Seeber dated February 10, 2022, in

which she opined that Plaintiff's outbreaks of HS "are as severe as outlined in Listing

8.06."  (R. 757).  The Council explained why it did not make Dr. Seeber's statement an

exhibit in the case record.

> We find that this evidence does not show a reasonable probability that it
> would change the outcome of the decision.  We further find that you did not
> have good cause for why you missed informing us about or submitting this
> evidence earlier. We did not exhibit this evidence.

Id. 752.

A.      **Standard for Admitting Evidence Submitted to the Appeals Council**

The regulations provide that the Appeals Council will review a case if, among

other criteria "the Appeals Council receives additional evidence that is new, material, and

relates to the period on or before the date of the hearing decision, and there is a

reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).  The regulations explain that the Council will only consider additional evidence under 20 C.F.R. § 404.970(a)(5)

>    (b)  … if you show good cause for not informing us about or submitting the evidence as described in § 404.935 because:
>
>    (1) Our action misled you;
>
>    (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
>
>    (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.  Examples include, but are not limited to:
>
>    (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
>
>    (ii) There was a death or serious illness in your immediate family;
>
>    (iii) Important records were destroyed or damaged by fire or other accidental cause;
>
>    (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or
>
>    (v) You received a hearing level decision on the record and the Appeals Council reviewed your decision.

20 C.F.R. § 404.970(b).

The Tenth Circuit has interpreted the regulations, and decided that when the Appeals Council accepts qualifying new, material, and chronologically relevant evidence, that evidence becomes a part of the administrative record which must be considered by a

court when reviewing the final decision.  O'Dell v. Shalala, 44 F.3d 855, 858-59 (10th Cir. 1994).  "Whether [evidence] qualifies as new, material and chronologically relevant is a question of law subject to [the court's] de novo review," and if the evidence does not qualify, the court will not consider it in its judicial review.  Chambers v. Barnhart, 389 F.3d 1139, 1142 (10th Cir. 2004).  "Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings."  Id. Shortly thereafter, the Tenth Circuit explained that when the Appeals Council does not specify whether the evidence submitted to it qualifies as new, material, and chronologically relevant evidence, but makes the evidence at issue a part of the administrative record, the court will interpret that action "as an implicit determination" that the evidence is "qualifying new evidence," and will consider it in its substantial evidence review of the Commissioner's decision.  Martinez v. Barnhart, 444 F.3d 1201, 1207 (10th Cir. 2006).

Further, the Social Security Act provides that in judicial review of a decision of the Commissioner of Social Security the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g) (sentence six).

**B.    Analysis**

Plaintiff argues, "Dr. Seeber's questionnaire directly addressed whether [Plaintiff]'s condition was as severe as the requirements of listing 8.06 as of November

8

20, 2017" and "meets the requirements outlined in <u>Chambers</u>."  (Pl. Br.20).  The court finds however, that it does not meet the requirements of <u>Chambers</u> in that the statement is not new within the meaning of the Act and the regulations.  To be sure, Dr. Seeber's statement that Plaintiff's "outbreaks are as severe as outlined in listing 8.06" was not in existence until February 10, 2022, and in that sense was new.  However, as the Appeals Council found Plaintiff "did not have good cause for why you missed informing us about or submitting this evidence earlier."  (R. 752).  Nowhere has Plaintiff attempted to provide good cause for failing to submit the evidence within the time prescribed in 20 C.F.R. § 404.935 for one of the reasons provided in that regulation or in 20 C.F.R. § 404.970(b).  Nor has he shown before this court "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g) (sentence six).

While Plaintiff argues that Dr. Seeber's statement was not in existence before the ALJ made his decision, he has not demonstrated that Dr. Seeber's opinion was not available before the ALJ's hearing and could not have been obtained before the hearing or that another reason contemplated by 20 C.F.R. § 405.970(b) prevented procurement of the opinion.  In fact, the record reveals the Dr. Seeber was asked if Plaintiff's "outbreaks are as severe as outlined in the Listing 8.06?"  (R. 1011-12) (Dated August 8, 2019, question no. 3).  As the ALJ found, Dr. Seeber's answer was not responsive to the question and did not speak to the issues in the Listing.  <u>Id.</u> 772.  Plaintiff makes no attempt to explain why in the intervening 16 months between Dr. Seeber's response and the hearing he was unable to secure her opinion in response to the question because he

was misled by the agency's actions; he had limitations preventing him from submitting the information; or another "unusual, unexpected, or unavoidable circumstance beyond [his] control prevented [him] from informing [SSA] about or submitting the evidence earlier" as required by 20 C.F.R. §§ 404.935(b) and 404.970(b).  Dr. Seeber's statement is not new within the meaning of the Act and the regulations and may not be considered by this court in its judicial review of the decision below.

## III.    Whether Plaintiff's Condition Medically Equals a Listed Impairment

Plaintiff argues the ALJ did not properly evaluate whether his condition medically equals a Listed impairment.  (Pl. Br. 13-19).  Regarding Listing 8.06, he argues the ALJ erroneously focused on the non-exhaustive examples of "extensive skin lesions" provided in 20 C.F.R., Pt. 404, Subpt. P, App.1 § 8.00(C)(1)(a-c) (Pl. Br. 14-15) rather than the definition of extensive skin lesions—"those that involve multiple body sites or critical body areas, and result in a very serious limitation."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 8.00(C)(1).  Referring specifically to whether Plaintiff's condition medically equals Listing 8.06, Plaintiff argues the ALJ did not consider whether Plaintiff's condition is of at least equal medical significance to Listing 8.06.  (Pl. Br. 18).  He concludes by arguing, "It is difficult to imagine that painful, recurrent, oozing, foul smelling boils/abscesses between the scrotum and rectum, groin and armpits are not of equal medical significance to any listed impairment."  Id.

He argues that in evaluating Dr. Berman's testimony that Plaintiff's condition medically equals the severity of Listing 1.18 the ALJ found that the record does not meet the criteria of sections B. C, and D of Listing 1.18 but did not discuss whether the

findings are of equal medical significance to the criteria of the Listing.  (Pl. Br. 16).

Plaintiff argues that contrary to the ALJ's finding that "Dr. Berman did not suggest any

rationale for finding such requirements or their equivalent have occurred in this case"

(R.769), Dr. Berman did explain the basis of his opinion, summarizing the impairments

he relied upon [sic]."  (Pl. Br. 16) (citing R. 799-800).

> He argues, specifically:
>
> Although [Plaintiff] does not have the type of joint deformity outlined in
> listing 1.18, he does have the functional limitation outlined in 1.18D3 (An
> inability to use both upper extremities to the extent that neither can be used
> to independently initiate, sustain, and complete work-related activities
> involving fine and gross movements).

Id. 19.  He argues, "In other words, [Plaintiff]'s combination of impairments had

the same medical significance as the limitations outlined in 1.18(D) (inability to

use bilateral upper extremities to independently initiate, sustain and complete

work-related activities)."

Plaintiff acknowledges the ALJ's explanation that he considered the effects of

obesity and his finding "no evidence that 'obesity caused symptoms or limitations

sufficient to meet any listing.'"  (Pl. Br. 16) (citing R. 768).  Plaintiff argues, however,

that the ALJ "did not specifically consider the combined effect of obesity with the

claimant's other severe and nonsevere impairments in his equivalency evaluation"

although Dr. Berman did.  Id. (citing R. 800).  He argues, "the ALJ was quick to attribute

[Plaintiff]'s difficulty with gait, range of motion and difficulty with orthopedic

maneuvers to his obesity ([]R 771-772) while asserting that [Plaintiff] did not have

significant joint pain rising to the level of extensive skin lesions under 8.06," thereby

suggesting that Plaintiff's difficulties with gait, range of motion, and orthopedic maneuvers are at least of equal medical significance to the criteria of Listing 8.06.  (Pl. Br. 16-17).  Plaintiff argues the ALJ did not evaluate Dr. Berman's medical opinion in accordance with 20 C.F.R. §§ 404.1520c and 416.920c.  Id. 17.  He argues, "Dr. Berman properly considered the combined effects of obesity with [Plaintiff]'s impairments in his conclusion that [Plaintiff]'s condition equaled listing 1.18."  Id. 19.

### A.     Standard for Evaluating Severity at Step Three

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling.  20 C.F.R. §§ 404.1525(a), 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling.  Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, the claimant "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)); see also, Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (burden shifts to Commissioner only at step five).  "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing <u>any</u> gainful activity, not just 'substantial gainful activity.'" <u>Zebley</u>, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." <u>Yuckert</u>, 482 U.S. at 153.  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." <u>Caviness v. Apfel</u>, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

<u>Medical equivalence</u> to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).  The determination of medical equivalence is made without consideration of vocational factors of age, education, or work experience. <u>Id.</u>

### B.    The ALJ's Step Three Findings

Regarding obesity, the ALJ recognized that obesity and other impairments might "results in signs, symptoms, and laboratory findings that are of equal medical significance to one of the listings.  [But i]n this case, there is no evidence indicating the claimant's obesity caused symptoms or limitations sufficient to meet any listing."  (R. 768).  He discussed Listing 8.06 for HS, explaining he used the definition of "extensive skin lesions" from 20 C.F.R., Pt. 404, Supt. P, App. 1 § 8.00(C)(1) which "requires skin

lesions that interfere with the motions of joints and that limit the use of more than one extremity, or tha[t] limit the ability to perform fine and gross movements, or that limit the ability to ambulate." (R. 768-69). He concluded that the evidence establishes flares of three-month duration and that Plaintiff appears to have followed prescribed treatment but concluded that the evidence does not demonstrate "extensive skin lesions" within the meaning of the Listing. He noted:

> that the claimant may have had periods with lesions in both axilla or possibly in both inguinal areas, although this is not well documented. Nevertheless, these have not met the requirements for "extensive skin lesions,["] because the claimant has not had skin lesions that interfere with the motions of joints and that limit the use of more than one extremity, or than [sic] limit the ability to perform fine and gross movements, or that limit the ability to ambulate.

Id. 769. He also found Dr. Berman's opinion the Plaintiff's condition medically equals Listing 1.18 unpersuasive because "it does not correspond to the medical record." Id. He explained:

> While the claimant does have pain, the claimant has not demonstrated the required findings of sections B, C, and D [of Listing 1.18], with no findings of abnormal motion, instability, or immobility of a joint, no abnormality of the joint, and no 12-month need for an assistive device or inability to use both upper extremities for 12 months. Additionally, Dr. Berman did not suggest any rationale for finding such requirements or their equivalent have occurred in this case.

Id.

## C.      Analysis

Plaintiff's claim of error misses the burden of proof and the legal standard applied at step three in the sequential evaluation process. The burden of proof at step three is Plaintiff's, not the Commissioner's. Blea 466 F.3d at 907. To meet the severity of a

Listing at step three Plaintiff must demonstrate that his condition meets <u>all</u> the criteria of that Listing.  <u>Zebley</u>, 493 U.S. at 530.  To establish medical equivalence to the severity of a Listing, Plaintiff must show his condition "is at least equal in severity and duration to <u>the criteria</u> of any listed impairment."  20 C.F.R. §§ 404.1526(a), 416.926(a) (emphasis added).  The court will not read the Listings expansively.  <u>Caviness</u>, 4 F. Supp. 2d at 818.

The criteria of the Listings are controlling.  To meet a Listing, a claimant must show each criterion of that Listing is met.  To medically equal a Listing, Plaintiff must demonstrate "the findings related to [his] impairments are at least of equal medical significance to those of a listed impairment."  20 C.F.R. §§ 404.1526(b)(2&3), 416.926(b)(2&3).  The findings "of a listed impairment" relevant to medically equaling that impairment are the criteria of that Listing.  Thus, to medically equal a Listing, Plaintiff must show findings regarding his condition "at least of equal medical significance to" each criterion of that Listed impairment.

When the ALJ makes a finding of fact supported by substantial record evidence ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"), Plaintiff may not merely rely on record evidence which might support a contrary conclusion.  He must show that the evidence <u>compels</u> the conclusion he desires.  <u>Elias-Zacarias</u>, 502 U.S. at 481, n.1.  Here, Plaintiff does not make the requisite showing that his condition medically equals a Listed impairment.  He argues the ALJ did not consider whether Plaintiff's condition is of at least equal medical significance to Listing 1.18 or 8.06 but he does not point to record evidence which compels a finding that

Plaintiff's condition is of at least equal medical significance to each criterion of either Listing.

Plaintiff argues that his "combination of impairments had the same medical significance as the limitations outlined in 1.18(D) (inability to use bilateral upper extremities to independently initiate, sustain and complete work-related activities)," and that "Dr. Berman properly considered the combined effects of obesity with [Plaintiff]'s impairments in his conclusion that [Plaintiff]'s condition equaled listing 1.18." (Pl. Br. 19). In making these arguments Plaintiff misunderstands both the record and the legal standard.

His argument Dr. Berman considered the combined effects of obesity with Plaintiff's other impairments is based on his understanding Dr. Berman explained the basis of his opinion when he summarized the impairments upon which he relied; id., at 16 (citing R. 799-800); despite the ALJ's finding "Dr. Berman did not suggest any rationale for finding such requirements or their equivalent have occurred in this case" (R.769). To be sure, Dr. Berman stated the impairments upon which he based his opinion:

> considering [Plaintiff's] extreme obesity, the diagnosis of hidradenitis suppurativa, which recurrently returns, the diagnosis of gout, the pain in both knees and in the right foot, that he has impairments equivalent to listing 1.18, joint pain. I believe this is true as of September 2017. It is still true now. It is likely to continue.

(R. 800). However, Dr. Berman's opinion specifically relies on Plaintiff's reports of gout and pain in his right foot and both knees and ignores, as the ALJ noted, the record does not contain a diagnosis of gout or arthritis and that subjective reports without association with a medically determinable impairment may not support a finding of disability. (R.

16

768).  Further, as the ALJ noted, Dr. Berman did not suggested any rationale to find any impairment, medical condition, or limitation which is of at least equal medical significance to the B, C, and D criteria of Listing 1.18.  Plaintiff argues, "The ALJ did not ask for further clarification nor did he ask Dr. Berman to 'identify medical evidence in the record that supports the ME's [(medical examiner)] statements as is required by SSR 17-2p.'"  (Pl. Br. 16) (quoting 2017 SSR LEXIS 2, *9).  The reasons Dr. Berman provided for finding medical equivalence, though found unpersuasive by the ALJ, were clear and did not require a request for further clarity.  Moreover, Dr. Berman identified the medical evidence in the record supporting his statements, thereby mooting the need for the ALJ to request such identification.  (R. 799-800) (Dr. Berman citing Exs. 4F, 10F, and identifying an examination on May 21, 2021).

Plaintiff's argument that he has an "inability to use bilateral upper extremities to independently initiate, sustain and complete work-related activities" which is equal medical significance as the limitations outlined in 1.18(D), misquotes and misunderstands the Listing requirements.  Paragraph D3 of Listing 1.18 requires "An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4)."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.18D(3).  Paragraph 1.00E4 cited in the Listing provides:

> Fine movements, for the purposes of these listings, involve use of your wrists, hands, and fingers; such movements include picking, pinching, manipulating, and fingering. Gross movements involve use of your shoulders, upper arms, forearms, and hands; such movements include handling, gripping, grasping, holding, turning, and reaching. Gross

movements also include exertional abilities such as lifting, carrying, pushing, and pulling. Examples of performing fine and gross movements include, but are not limited to, taking care of personal hygiene, sorting and handling papers or files, and placing files in a file cabinet at or above waist level.

Id. App. 1 § 1.00E4.  Listing 1.18D3 requires the <u>inability</u> to use the wrists, hands, and fingers to pick, pinch, manipulate, and finger, and the <u>inability</u> to use shoulders, upper arms, forearms, and hands to handle, grip, grasp, hold, turn, reach, lift, carry, push, and pull.  These limitations preclude such activities as "taking care of personal hygiene, sorting and handling papers or files, and placing files in a file cabinet at or above waist level."  <u>Id.</u>  Although the ALJ found that Plaintiff sometimes has flares lasting three months, he found that even during flares the evidence does not support limitations in the ability to perform fine and gross movements as required by the Listing 1.18D.

Regarding Listing 8.06 for Hidradenitis Suppurativa, Dr. Berman testified that it would cause "pain in moving, decreased range of motion, [a]nd this would be aggravated during flares."  (R. 801).  Nonetheless, he testified Plaintiff's HS would not medically equal Listing 8.06 because, "in the period of September 2017 to the present, there wasn't a consistent diagnosis, objectively reported, of changes in the skin observed by examiners.  So, I think this comes and goes."  <u>Id.</u> at 800.  Despite Dr. Berman's testimony, Plaintiff argues the ALJ focused on the examples of extensive skin lesions rather than the definition and failed to consider whether Plaintiff's condition is of at least equal medical significance to Listing 8.06.  (Pl. Br. 18).  But his sole argument in this regard is: "It is difficult to imagine that painful, recurrent, oozing, foul smelling boils/abscesses between the scrotum and rectum, groin and armpits are not of equal

18

medical significance to any listed impairment." Id.  But Plaintiff's appeal to the court's natural concern for Plaintiff's pain, comfort, and presentment at the height of an HS flare says nothing about whether his condition medically equals the criterion of extensive skin lesions—those that involve multiple body sites or critical body areas, and result in a very serious limitation within the meaning of the Listing.  Nor does it speak to whether Plaintiff's condition medically equals the other criteria of the Listing.

Finally, the court notes that the ALJ in this case met the articulation requirements to find Plaintiff's condition does not medically equal a Listed Impairment.

> If an adjudicator at the hearings or AC [(Appeals Council)] level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

SSR 17-2p, 2017 WL 3928306, *4 (SSA March 17, 2017).

## IV.   Medical Opinions

Plaintiff makes two arguments of error in the ALJ's evaluation of Dr. Berman's opinion.  (Pl. Br. 21-22).  First, he argues the question in determining medical equivalence is whether there is equal medical significance and that whether Plaintiff meets the criteria of Listing 1.18 is irrelevant to the persuasiveness of the opinion regarding medical equivalence.  Id. 21.  He then argues Dr. Berman's opinion is

supported by the record as a whole.  (Pl. Br. 22) (citing Plaintiff's earlier use of the Family and Medical Leave Act (FMLA), classification of Plaintiff HS as Hurley stage III, and evidence HS causes pain in moving and decreased range of motion).

Plaintiff also makes two arguments of error in the ALJ's evaluation of Dr. Seeber's opinion.  Id.  First, he points out the ALJ discounted Dr. Seeber's opinion, in part, because she did not answer the question whether Plaintiff's condition rose to the severity described in Listing 8.06, and argues that is erroneous because Dr. Seeber clarified her opinion in a letter subsequently submitted to the Appeals Council.  Id.  He then argues Dr. Seeber's opinion is supported by the record as a whole.  Id. (noting evidence Plaintiff had two surgeries for his HS, Plaintiff complied with treatment but his flares recurred, Plaintiff took narcotic pain medication, and Plaintiff earlier worked with FMLA protections "despite his impairment flaring at a listing level frequency and severity on at least four occasions noted above.").

## A.     Standard for Evaluating Medical Opinions

Effective with claims filed on March 27, 2017, the agency changed the way medical opinions are evaluated.  The Commissioner promulgated a new regulation entitled, "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."  20 C.F.R. §§ 404.1520c, 416.920c (2017).  That regulation provides the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017).  The regulation provides that the SSA will

20

consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(a)(c)(1-5), 416.920c(a)(c)(1-5) (2017).  It provides that the most important factors in evaluating persuasiveness are supportability and consistency.  Id.

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings.  20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017).  The articulation requirement applies for each source, but not for each opinion of that source separately.  Id.  It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."  Id,

## B.  The ALJ's Evaluation of Dr. Berman's and Dr. Seeber's Opinions

As noted above, the ALJ evaluated Dr. Berman's opinion that Plaintiff's condition medically equals the severity of Listing 1.18 in his step three discussion in the decision. (R. 769).  He found the opinion not persuasive because it was not consistent with the medical record and because Dr. Berman did not support it with any rationale for finding the criteria of sections B, C, and D were met or medically equaled.  Id.

The ALJ evaluated Dr. Seeber's medical opinion toward the end of his RFC assessment.  Id. at 772.  He also stated his reasons for finding her opinion not persuasive; in her Medical Source Statement she did not respond to the question whether Plaintiff's condition equaled the severity of Listing 8.06, frequent flares are not documented in the

record, medical records do not record notable mobility issues, and her statements that Plaintiff is disabled are reserved to the Commissioner and are "inconsistent with her comments that he can work as a bus monitor."  (R. 772).

### C.    Analysis

Dr. Berman's statement that Plaintiff's condition equals the severity of Listing 1.18 is not within the definition of a medical opinion.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  But Dr. Berman is a physician secured by the agency and generally the opinions of such physicians at the ALJ hearing level would fall within the definition of a prior administrative medical finding which includes "Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1."  20 C.F.R. §§ 404.1513(a)(5)(iii) 416.913(a)(5)(iii). Although Dr. Berman's statement of equivalence is not technically a prior administrative medical finding in this case, such findings are evaluated by the same standards as medical opinions.  20 C.F.R. §§ 404.1520c, 416.920c.  Therefore, the court finds it was appropriate for the ALJ to evaluate the persuasiveness of Dr. Berman's opinion in accordance with 20 C.F.R. §§ 404.1520c, 416.920c.  The ALJ found Dr. Berman's equivalence opinion was not consistent with the record evidence and was not supported by rationale explaining its equivalence with the criteria of Listing 1.18.  (R. 769).  Those findings are supported by the record evidence.  As to the issue of equivalence itself, that was discussed above and the court will not repeat its analysis here.

Plaintiff's claim of error in evaluating Dr. Seeber's opinion fares no better.  As noted above, Dr. Seeber's "clarification" of her Medical Source Statement provided in

the first instance to the Appeals Council after the ALJ's decision is not new, material, and

chronologically relevant evidence within the meaning of the Act and regulations and may

not be considered by this court in its judicial review of the decision below.  As to

Plaintiff's argument that Dr. Seeber's opinion is supported by the record evidence, that is

insufficient to show error in the ALJ's finding.  Plaintiff must demonstrate the error in the

ALJ's rationale or finding; the mere fact that there is evidence which might support a

contrary finding will not establish error in the ALJ's determination.  "The possibility of

drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's findings from being supported by substantial evidence.  [The

court] may not displace the agency's choice between two fairly conflicting views, even

though the court would justifiably have made a different choice had the matter been

before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted);

see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  Plaintiff does not

demonstrate the error in the ALJ's rationale or point to record evidence which compels

finding Dr. Seeber's medical opinion persuasive.

## V.     Evaluation of Plaintiff's Allegations of Disabling Symptoms

Plaintiff claims the ALJ did "not evaluate any of the factors identified in SSR 16-

03 to determine how the HS affects [his] ability to work."  (Pl. Br. 23).  Although

Plaintiff acknowledges the regulatory factors in 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3) and SSR 16-3p need not be considered "in a formalistic way, but the

substance must be there," Brownrigg v. Berryhill, 688 F. App'x 542, 546 (10th Cir.

2017), he argues the ALJ did not cite any of the factors while suggesting the ALJ did not

provide the substance of the required analysis and that his reasons are not clearly articulated such that a subsequent reviewer might understand his evaluation.  (Pl. Br. 23). Plaintiff argues the ALJ summarily stated Plaintiff's allegations of disabling symptoms are not consistent with all the record evidence "for the reasons explained in this decision" (R. 770) but "failed to evaluate consistency under SSR 16-3p in the remainder of the decision."  (Pl. Br. 24).

He argues the ALJ erred in relying on Plaintiff's ability to work with the same impairments before the period at issue because Plaintiff was protected by FMLA and nevertheless lost his job due to excessive absences, and in any case "A desperate person might force himself to work despite an illness that everyone agreed was totally disabling."  Id. (quoting Hawkins v. First Union Corp. LTD Plan, 326 F.3d 914, 918 (7th Cir. 2003)).  He then quibbles with the ALJ's consideration of treatment records, Plaintiff's pain and use of narcotic pain medication, use of his arms and legs, Plaintiff's and his wife's testimony, Plaintiff's contemporaneous journaling, surgical treatment, adverse side effects of prophylactic antibiotics, Plaintiff's dressing his wounds and changing clothing, the foul odor of drainage from his lesions, the classification of Plaintiff's HS as "Hurley stage III," and consideration why medical evidence was lacking after the alleged onset date.  Id. 25-26.  He ends his argument by summarizing evidence which in his view is consistent with his allegations.  Id. 26-27.

The Commissioner argues the ALJ correctly applied the regulations and SSR 16-3p in evaluating Plaintiff's allegations of disabling symptoms.  (Comm'r Br. 15).  She argues "the ALJ noted inconsistencies between Plaintiff's allegations and the record

evidence," including inconsistent reports of limitations and complaints inconsistent with examination findings.  (Comm'r Br. 15).  She notes some limitations asserted by Plaintiff which are not supported by medical records and explains how the ALJ evaluated them and "reasonably limited Plaintiff to sedentary work with postural limitations."  Id. at 16. She recognizes the ALJ considered Plaintiff sought sporadic treatment and argues "there is no evidence that he lacked access to, or was ever denied, any free or low-cost health care," and his treatment was "quite conservative in nature, despite his reported symptoms."  Id.  She also acknowledges the ALJ considered Plaintiff's part-time work as a bus monitor and trainee bus driver and argues it is proper to use such work to demonstrate Plaintiff's allegations of symptoms were not as severe as alleged.  Id. 16-17.

Finally, the Commissioner suggests Plaintiff does not challenge the ALJ's reasons for discounting Plaintiff's allegations, but merely "complains that the ALJ should have considered other evidence, including that he had surgery to remove his lesions well before the alleged onset date, that he lost his prior job due to excessive absences, and that he took narcotic pain medication to control his pain."  Id. 17.  She argues the ALJ is not required to provide "a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility."  Id. (quoting Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)).

## A.   Standard for Evaluating a Claimant's Allegations of Symptoms

An ALJ's evaluation of a claimant's allegation of symptoms is generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  Such "determinations are peculiarly the

province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's evaluations, the court will usually defer to the ALJ on matters involving a claimant's allegations.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  However, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

Moreover, the Tenth Circuit Court of Appeals has condemned the practice of dismissing Plaintiff's allegations of symptomatology on the strength of a boilerplate recitation of the law.  White, 287 F.3d at 909 (citing Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995) (where the ALJ merely notes the law governing assessment of allegations of symptoms, discusses the evidence in general terms, and finds in a conclusory fashion that the evidence does not support Plaintiff's allegations of disabling severity, remand is necessary to allow the ALJ to specifically link his findings to the evidence)).

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms.  Thompson, 987 F.2d at 1488 (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated:  The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We

must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler, 68 F.3d at 391 (quoting Thompson, 987 F.2d at 1489).[2]

---

[2] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. §§ 404.1529, 416.929 (2017) is still the proper standard to be used as explained in the regulations in effect on January 21, 2022, when this case was decided.  Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

**B.**      **The ALJ's Findings Regarding Plaintiff's Allegations of Symptoms**

The ALJ explained he had considered Plaintiff's allegations of symptoms and their consistency with the record evidence "based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p."  (R. 769).  He summarized the standard applied.  Id. 770. He then stated his finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Id.

As stated, the ALJ explained the inconsistencies and reasons relied upon to discount Plaintiff's allegations of symptoms.  He noted Plaintiff was referred for two consultative exams, to the first of which he took a cane and to the second of which he did not.  Id. 771, 772.  The ALJ found Plaintiff has not established the need for a cane because "his treatment notes do not document any abnormal findings that would suggest a need for a cane.  There is also no evidence a cane has ever been prescribed or suggested, and nothing indicates it is medically necessary."  (R. 771) see also, id. 772

("He was not using a cane, despite his gait and obesity, which does correspond to the lack of a need for a cane reflected in his own treatment notes."). The ALJ noted Plaintiff's unremarkable exam findings indicate only a slight limitation in range of motion. Id. 771. The ALJ found Plaintiff's allegations of inability to use his arms or to walk are not supported treatment notes. Id. He explained:

> Instead, his exam findings indicate he have [sic] not documented an inability to use his arms or legs, perform fine and gross movements, or walk, throughout his alleged period of disability.
>
> Prior examination had not revealed any indications of limitations in use of an extremity due to his skin lesions. It is reasonable to assume that, when he has lesions, pain does affect his functioning, but limitations in use of the extremities or in the ability to walk due to his lesions is simply not documented in his exam findings.

Id. Finally, the ALJ recognized Plaintiff's claims of "trouble wearing clothing, a need to change clothing during the day, an inability to use the arms due to lesions, and problems sitting." But he found, "unfortunately, none of these allegations are actually supported by medical evidence." Id. at 772.

### C.   Analysis

Plaintiff's argument the ALJ did not cite any of the regulatory factors, suggesting the ALJ did not provide the substance of the required analysis, and that his reasons are not clearly articulated such that a subsequent reviewer might understand his evaluation is without merit. While the ALJ might have been more extensive in his analysis, as noted above he provided four inconsistencies upon which he relied in discounting Plaintiff's allegations of symptoms. That is sufficient.

Further, Plaintiff's suggestion the ALJ discounted his allegations of symptoms based upon the fact Plaintiff "worked while suffering from HS, obesity and hypertension and there was no change in those conditions as of the alleged onset date" is, at best, mere speculation. (Pl. Br. 24) (citing R. 770). While it is true that, on the page cited, the ALJ noted that Plaintiff "is obese," "has also been diagnosed with HS," and "had a history of hypertension," and stated, "Despite the prior onset of these conditions, there was no change in these conditions at the time of the alleged onset date," he in no way suggested he relied on the fact of Plaintiff's past work as a corrections officer as a reason to discount Plaintiff's allegations of symptoms. In fact, the only time he mentioned Plaintiff's work as a corrections officer was when he noted it was Plaintiff's past relevant work of which he was no longer capable. (R. 773).

Plaintiff's claim of error in the ALJ's finding of infrequent and sporadic treatment after the alleged onset date is, likewise, without merit. His suggestion the ALJ noted a lack of medical evidence after the alleged onset date which triggered SSR 16-3p's requirement to consider possible reasons he may not have sought treatment consistent with the degree of his or her complaints misunderstands the ALJ's decision. The ALJ's statement Plaintiff's "records suggest he sought only infrequent and sporadic care for" HS was made for the purpose of explaining why the medical evidence was unclear in showing periods of symptoms lasting three months. (R. 769). He was not suggesting that Plaintiff's infrequent and sporadic care demonstrated his allegations were not true. In fact, he went on to accept Plaintiff's testimony in that regard, "he has had periods of active lesions throughout the period addressed by this decision, and there are signs of

extensive scarring.  Couple [sic] with the claimant's testimony regarding the frequency and duration of his flares, the undersigned does find this sufficient to establish the three-month duration for flares."  (R. 769).

In his Brief, Plaintiff cited to the ALJ's other reference to "sporadic" treatment which involves but one more misunderstanding of the ALJ's decision.  (Pl. Br. 25) (citing R. 771).  Plaintiff acknowledges that the ALJ noted treatment by his dermatologist but argues the ALJ erred in stating current lesions were not described because the dermatologist "noted the presence of single comedones, double comedones, inflammatory papules, nodules and bridging scars and the doctor outlined the areas of skins examined."  Id. (citing R. 742).  Here is the ALJ's statements to which Plaintiff attributes error:

> Subsequently [to the alleged onset date], he continued to sporadically seek treatment for HS lesions.  In January 2018, he has cysts in the axilla and groin (Exhibit 9F, p.3 [R. 579]).  Then, in February 2018, he saw a dermatologist for his history of lesions on the "legs, abdomen, groin, rectum, and buttocks," but current lesions were not described (Exhibit 5F, p.4 [R. 568]).

(R. 770-71).

Consideration of the treatment notes cited by the ALJ illustrate the accuracy of the ALJ's findings.  Dr. Seeber's note dated January 29, 2018, states, "multiple draining cysts of groin and armpits bil[aterally]."  (R. 579).  Here, Dr. Seeber described the location of the cysts and that they were draining.  Dr. Passman's note dated February 14, 2018, does not describe the comedones, papules, nodules, or bridging scars.  Rather, every type of lesion listed on the form; single comedones, double comedones,

inflammatory papules, nodules, and bridging scars; has a box checked indicating that it is

"Present," and every body part listed on the form; head, groin, genitalia, buttocks,

abdomen, upper extremities, lower extremities, and nails/digits; has a box checked

indicating that it was "Examined."  (R. 568, 742[3]).  As the ALJ noted, Dr. Passman's note

does not provide a description of the lesions contemporaneous with the examination and

useful to the ALJ as did Dr. Seeber.  This is further illustrated by reference to Dr.

Passman's treatment note dated January 21, 2010, wherein he explained Plaintiff's

"axillary vaults show signs of double comedones and scarring.  His groin has active

double comedones extending throughout the whole inguinal canal bilaterally."  (R. 744)

(emphases added).  Plaintiff has not shown error in this regard.

Plaintiff's remaining quibbles with the ALJ's consistency findings either rely on

the allegations of Plaintiff or on a different view of the evidence than the ALJ and do not

compel a different result than reached by the ALJ.  As noted above, the court's

consideration of the ALJ's evaluation of a claimant's allegation of symptoms is

deferential and will not be overturned when supported by substantial evidence.  Wilson,

602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  The reasons relied upon by the ALJ

in discounting Plaintiff's allegations of symptoms are supported by substantial

evidence—"such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Perales, 402 U.S. at 401.  Therefore, to accept other allegations of

Plaintiff to overturn the ALJ's evaluation would be incongruous.

---

[3] Page 742 of the record, cited by Plaintiff, is a duplicate of page 568, cited by the ALJ.

## VI.   RFC

Plaintiff's argument that the RFC assessed is flawed is based upon limitations reported by himself.  Having failed to show error in the ALJ's evaluation of his allegations of limitations, Plaintiff has not shown error in the RFC assessed.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated September 13, 2023, at Kansas City, Kansas.


s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**